This is Pacing Technologies v. Germin International, 2014-13-96. And when Mr. Wigman gets settled, we'll be ready to hear from him. May it please the Court. The intrinsic evidence in this case simply does not support a construction of the term playback device that requires it to produce a repetitive or so-called metronomic signal. Nothing in the specification or the prosecution history indicates that the patentee intended to ascribe a special or unique meaning to the term. Let's start with the preamble of Claim 25, the claim that's in dispute here. Just the preamble, and maybe that'll lead to other issues. But it clearly says that the system is to be used for pacing the user. Well, that's correct. But the preamble, with the district court, Your Honor, the district court, of course, held that the preamble is a limitation in the claim. We dispute that. What are the rules that govern when a preamble is a limitation? Well, Your Honor, there's several rules. One rule is, of course, it's our position that the preamble in this case merely states an intended use, a purpose or intended use. But doesn't this preamble actually provide antecedent basis? It provides no antecedent basis. It certainly does. Look at Claim 25, counsel. Well, I... No, please, wait. I understand. A repetitive motion for pacing a user, and the first element says a website adapted to allow the user. Doesn't the user necessarily have to refer back to the user enunciated in the preamble? Otherwise, this would be an indefinite claim under claiming practice. Well, I think, Your Honor, the user... I know this was not cited by opposing counsel. Yes. I understand that. But doesn't it... I mean, looking at it now, with me today, it's not really a complicated issue. Doesn't it quite clearly present antecedent basis? Well, it does say the user, but it could say a user. It's... I don't think there's any... Well, it could, but that's not what it does say, right? We read claims for what they say, not what they could say. That's correct. But when they say the user, doesn't that automatically, in patent parlance, refer back to a previously defined user? And the only previous definition is in the preamble. Well, Your Honor, the user is not a structural element of the claim. The user is... Does it provide antecedent basis or not? I think it does not. So this is an indefinite claim. No, it is definite, because the user is not a structural element. It's just a... It's a person who would use the system to structure. It's a system claim with structural elements. The user is not part of the system. It's not part... It's not a structural element. I agree, Your Honor, so the user... How can it not be a structural element? The system has to be adapted for a user to make a selection. It's not the case that the system can make the selection, right? This claim requires the user to make the selection, not the system to make a selection for the user, correct? Well, the system is limited to a user-selected attribute. Well, the system... Therefore, it is a limitation of this claim, because you could imagine a broader claim in which the system could present to the user, rather than user-selecting, the program that's going to be used. Well, I think the claim, Your Honor, would encompass both. Well, it allows the user to select, and it also allows the system to select. But even if the preamble is a limitation in the claim, it says for pacing. Pacing does not mean matching. The intrinsic evidence does not support such a limited construction of the term. Well, what about at column four? And this is cited, although not in detail, in the red brief, but it is there, so I'm not trying to surprise you with everything. But column four, line 54, in particular, it says, briefly describe those and other objects and features of the present invention. Now, we've had lots of cases recently where that present invention language can be important. The present invention are accomplished as embodied and fully described herein by a repetitive motion pacing system. That includes, why isn't this definitional? If the repetitive motion pacing system has to be what the present invention is, and down below it says a playback device adapted to producing the sensible tempo, why isn't this a definitional lexicography of what a repetitive motion pacing system must include, including a playback device adapted to producing a sensible tempo? It sounds like a definition to me. I think, Your Honor, with all respect, I think it's a rather broad description. It's part of the preferred embodiment? No, actually, this is not part of the preferred embodiment, right? A preferred embodiment discussion begins in column six, doesn't it? Detailed description of the preferred embodiment? Well, that's the detailed description. This says, briefly described, those and other objects and features of the present invention. This sounds like quite a general statement, not a statement of a preferred embodiment. It's saying all the features and objects of the invention, those described and others, have to be accomplished by this system. Your Honor, I think this is part of the intrinsic evidence, but I don't think it's determinative of the issue. I don't think it's a clear statement of a lexicograph attempt to define the term playback device, different from its ordinary meaning. The claim, playback device itself... Does it make a difference that that definition that Judge Moore is pointing out starts off by saying these and other objects and features of the present invention? Does the use of the word present invention change your argument any? No, Your Honor, I don't think it does. I think this is general patent language, type of language that I've seen for the past 50 years in a patent application. But isn't that language that alerts the court or the public to pay attention to what's coming up? Because you're specifically making expressed descriptions, definitions, choice language. I don't think it's a clear disavowal of claims scope, Your Honor. The claim itself is what controls. Is it a disavowal or is it a definition? It's neither, Your Honor. It's not a disavowal and I don't believe it's a definition. The inventor does not state that I'm defining the term playback device to mean a device that produces a repetitive signal. That would be a clear definitional statement. This is not, I think it's rather ambiguous and a stretch to say that the inventor intended to ascribe a specific definition to the term by this general language in the summary and objects of the invention. This is a place where we need to give the world clarity in the patent spec and in the law interpreting the spec. And in the GE Lighting Solutions case, which issued in 2014, it expressly says that the patentee limits his claims and he uses language such as, quote, the present invention includes or the present invention is, as a quote from the case. Why isn't that applicable here? How do I eke around that precedent? Why did you use present invention? Do so with care because you're going to be limited to what you say. Well, I don't think that that is a rule that this court has adopted for all cases. It may have been applicable in that particular case that you cite. I'm not familiar with it. But claim 25 is a system claim with three structural elements recited in the claim. The district court gave credence to the preamble for one reason and one reason only. You asked, Judge Moore, you asked before, what are the rules about preambles? And one rule is, you ought to see whether there's a structural element in the preamble that's essential. There is no structural element. There's a phrase, the user, but it's not a structural element. The preamble in this case was not used to distinguish prior art. It was not cited to the patent office in any sense to define the invention. But the sentence you said a minute ago, though, I mean, it resonates with me when you say, you know, just the words the present invention shouldn't be the be all and end all of deciding whether something is meant to be a lexicography and therefore deviate from plain meaning. But the problem for you is, in this case, there's nothing else about this intrinsic record that suggests that the playback device can be broader than something that's conveying and playing back sensible tempo for a user. Well, Your Honor, I think there is. I think, well, first of all, obviously, the preferred embodiment uses a music that such as a song that. Well, it also says video could be alternative. It does use video. There's lots of examples of sensory output that could be pacing. That's right, Your Honor. Figure 17 and the specification relating to that describes the use of video, which portrays moving images of a landscape through which a user would appear to be moving. It's like a video game where the landscape is moving past you. Now, that's not repetitive. That's a different modality. That's presenting some type of simulation of the landscape. So that's not, I think, a person skilled in the art reading the specification in its entirety. Now, I would agree that if the only thing that was in the specification was music with a repetitive beat, this case could be decided differently or could be viewed differently. But it's not. The video is a modality that does not use a repetitive signal. There's also reference in the specification to the use of text files. Now, that's not fully developed in the specification, but it's clearly stated, the inventor states in the specification that the... Counsel, when you say the video isn't repetitive, though, I had to ask my clerk to tell me where, again, the video was in the spec, and it's at column 16. Yes. But it is that the frame rate of the video matches the speed of the user. So it may not be the imagery itself that's repetitive, but it's the frame rate presenting... Your Honor, nobody can see the changing frame rate. It's not observable to the human eye. You see a moving image. You don't see frames. Nobody's matching frames. And even if somebody could discern it, there's no human on the face of the earth that could run fast enough. The landscape, though, is matched to the pace of the user. Well, it's a simulation. It's matched... Yes, but it's the simulation is matched to the pace of the user. It is, but not on a one-to-one repetitive motion. It's not like a video where you're sitting on a couch and you're watching frame after frame. It's, you go slow, then the features go slow. You speed up, and they speed up, too. They're matched to... They're matched. They're matched, but not on a one-to-one repetitive basis. But that's not what anyone has suggested, that the claim is limited. Oh, yes, they have, Your Honor. I think every... I mean, GARM, on page 52 of their brief, they say the real issue here is whether the claim can be screwed in a way that does not require repetitive output. That's the real issue. And everyone, both parties agree to that. Now... What did the district court construe the claim as? Your Honor, I see I'm into my rebuttal time, but I would like to answer that question. Please answer the question. The district court said that a playback device, it's not... Well, this is in the... You know, the district court originally said a playback device is a device that plays audio, video, visible signal. We're fine with that. It's sort of the riff on the word play, where the district court is reading into the word play some kind of repetitive or metronomic signal that somebody can match. He didn't say metronomic. What is his precise construction? Precise construction is, and it's in the record, summary judgment order... Did he say a system for providing a sensible output for setting the pace or rate of movement of a user performing a repetitive motion activity? Yes. It says the pace information is presented by the accused devices, but it's not played. Yes, but I think that Judge Lurie was properly reading his construction, and I don't see how that construction would exclude the embodiment in column 16 with the video that is set to the tempo of the runner. I don't see how the district court's construction would exclude that embodiment. Well, I think it would, Your Honor, because it's requiring a repetitive motion. This is on page A8. It's talking about a repetitive motion being matched. Mr. Wigman, as you noted, you're well into rebuttal time. If you want to let us hear from Mr. Groombridge, we'll give you your full five minutes. Good morning, Your Honors. I thought I would start with what portions of the intrinsic evidence define playback device here. On the Garman side of things, we certainly agree with the remarks that I think Judge Moore made with respect to the definitional language at the bottom of column four. That is the first introduction of the term data storage and playback device. That's not a definition for playback device, is it? How is that lexicography on playback device? On bottom of column four, because I think what it's telling you is that the playback device has to be adapted to produce in a sensible tempo. You think that's a clear and unmistakable term about playback device? See, I thought what it helped you with was the preamble, which thereby limited playback device by virtue of the preamble, but I don't see this, the way you've argued it in your statement about playback device in the abstract. I think the way that we would look at this, Your Honor, is to say we'd call out three parts. There are many parts in the specification that are relevant, but the salient three would begin with the very first sentence on column one, line 15, which talks about the present invention. And in that, particularly in lines 19 to 24, it says, the present invention relates to to do certain things, and one of which is to select and use audible or visible information characterized by tempos that match the individual's repetitive activity tempo. So the first thing that was right in the very first sentence, it's saying… Yes, but that says nothing about playback. That doesn't. It selects them, right? But that's not a definition of playback. That's a definition of what you need to select. This is the definition of the invention, and then when we go after a long list of objects of the invention, when we arrive at the bottom of column four, what we learn there is the portion of the invention that does that, the portion of the invention that produces the audible or visible information characterized by tempos that match the individual's repetitive activity tempo, is the playback device. That's the only portion of the invention. In the definitional language beginning at the bottom of column four, it's the first introduction of how the goals of the invention are realized. And then we would go on. One other portion of this that we think is highly relevant is now moving into the preferred embodiments at the top of column 14. And unlike the other two pieces of the specification, this is now preferred embodiments, not, quote, the invention, unquote. There in lines two to five, there's an important statement that says, for pacing purposes, a desired pace in steps, pedal strokes, arm strokes, or the like per minute, and a song's BPM, or beats per minute, must be substantially or at least approximately equal. And what that's telling us, again, there is that the way that for pacing, to accomplish pacing, we have to have at least approximate equality between the pace of the repetitive activity and the repeated beats or the tempo of the signal that's being produced. And that's, again, the word must used, we suggest, deliberately. In the case law of this court, we'd suggest that that is, those are words of manifest restriction, if you like. I don't understand. This entire thing is predicated by referring to figure 11. And this is the description of figure 11. So I don't see how this is a general statement, that every embodiment herein contemplated or otherwise considered, or that this is an essential or critical feature of the, quote, present invention. This seems to me, column 14, to be nothing more than a detailed description of the embodiment contained in figure 11. I don't see how this equates to anything like the other cases in which language has amounted to this claim. Well, I would read this, Your Honor, looking, for example, at column 13, line 63.  Well, it's the system of the preferred embodiment, as Claint described. Right, and again, this is- That doesn't say the present invention. There are magic words, Mr. Groombridge, and these aren't them. There certainly are magic words, which is- There's nothing here that says critical, important, essential, present invention. This is completely characteristic of any patent. Well, Your Honor, I'm not sure I would agree with that, that the, when a patent drafter uses a word like must. In the context of the description of a particular embodiment. Well, no, this says for pacing purposes. In the context of the description of a particular embodiment. I don't see how you could extrapolate this at all. Perhaps we just disagree, Your Honor, but I would say when it says for pacing purposes, what it's talking about is the pacing that is central to this entire patent. And the concept of pacing in this patent is that I take a signal that has some form of repeated element to it. Could be the beat of music, could be pulses of light, could be reading a text file to say step, step, step, step, and I match my activities to that. And what this is saying is for pacing purposes, the desired pace has to be approximately equal to the- This also says that has to occur with a song. Are you going to suggest to me that this claim is limited to song? No, absolutely not. Then how, given that song sort of is the same part of this sentence, that's why I don't see how this isn't just a description of an embodiment as opposed to a general statement about the invention. Because, Your Honor, I think what this is doing, this is explaining how pacing is accomplished. And it may be explaining it in the context of the embodiment of Figure 11 where we're talking about a song, but it's saying the way I pace is by that approximate matching, which, again, if Your Honor recalls, is the very first sentence talks about that, characterized by tempos that match the individual's repetitive activity tempo. And that throughout this patent, throughout the specification, what we're getting over and over again are these statements that say the way you pace here in our invention, whatsoever the embodiment, is that you match a repetitive signal with a repetitive activity. And that's precisely what the products accused in this case cannot do. And so we would say here that from the standpoint of the data storage and playback device, this turns on what does the word play mean in the patent. And the district court correctly found that the patent uses the word play to refer to things that have that repeated metronomic quality to them. It doesn't have to be metronomic, but it has to have some sort of pulse that can be perceived by a human being. And the district court correctly and very carefully differentiated between presenting information or displaying information. What about the landscape scenery? Is that pulsated also? Does that come in a B? I believe it is. Sorry. Does it not just kind of flow through? No, I believe that in that embodiment, what's going on is exactly the use of a signal like music to allow the user to establish a pace, a desired pace that's been chosen in advance. And then the video is being adjusted to match the pace so that when… It doesn't have a beat. I think it does. It can be perceived by a human. No, no, I think that, and let me just be clear, that this argument was raised for the very first time, as far as I can tell, in the gray brief in this case. It was never raised below. We have never addressed it, and I'm more than happy to address it now. But that portion of the specification, what it's saying here is we're now talking about figure 17, and we're saying that the system, that's the complete system, including the data storage and playback device, may be an integral part of or interconnected with something else, let's say a treadmill. And that what it's saying then is that I'm going to have the full and complete operation of the system, 100, already with its ability to pace using repeated information. And in addition to that, I'm going to connect it to the video display on a treadmill so that, for example, if it's January and you can't go out and run your favorite circuit because there's snow on the ground, the system can project for you the scenery that you would see, and it will change. It will, as you speed up and slow down in response to the music you're hearing in the earphones, the video display will speed up and slow down likewise. And that's exactly what's being talked about in this embodiment, right? So, for example, if we look at... Does that pace the user, or is it simply following the user? I think the user is already being paced by the system, and in addition to that, the video is being now adjusted, the frame rate or speed of the video. I just have a hard time seeing that. I can understand how a beat or a burst of light or even a song can pace a user to go faster, but how does the video do that? I think in this embodiment, the video is not what does that. The video is merely a sensory accessory, if you will, so that, for example, in figure 15, we see what is described as a real-life course. It's like a flat image. It's not a pacing image. That's what your patent does, though, right? Our patent describes, typically, a series of things that say you're running too slowly. They're static. They're typically... They are static, with the exception that there's a countdown timer. Why is this video not static? Right. The video is not static here, but the best way I could explain this embodiment would be to say there's a real-life outside embodiment where it says, look, figure 15, this is a course that you might want to run, and it's divided into five segments. The first one, A, let's say, is flat. You're running on a road, and the system knows that when you're running on the road, you know, it plays for you a piece of music that has the right pace. And then you come to section C, let's say, where you're now running up a hill, and it's all squiggly. And the system knows, because it has some sort of geographic sensor in it, that you've reached that point, and you want to run slowly, and it picks a different song with a slower beat, because you need a slower pace going up the hill. And that's all outside in the real world. What the figure 17 embodiment is saying is, let's assume you can't be in the real world, and you have to be on a treadmill. I'll replicate on the video in front of the treadmill what you would have seen if you were out running your favorite course. And it expressly refers back— So you're saying that this embodiment isn't really an embodiment of the invention. It is an optional feature that could be added to the— Exactly, Your Honor. And would that be supported by the preceding paragraph on column 16, which I hadn't read prior to sitting right here, so I may be wrong. But at column 16, where it says at line 34, another example of the method of using the system of 100, that's the same sentence verbatim as what is presented here. But then it goes on to describe, basically, a device can determine your speed or rate of rotation, which doesn't really seem to have anything to do with pacing. It has to do with providing an optional feature of letting you know how fast you're going or something, as opposed to— I think there's a clear relationship between these two, and the language, the system 100 may be an integral part of or interconnected with, or interconnected to, appears both in that paragraph, Your Honor, and in the following one about which we were just talking. But I think that that paragraph in column 16, beginning at line 34 and going to line 50, is about a different optional add-on, where now I'm running, I have my headphones, the music is playing to pace me at the pace I've picked, and now the system can connect with the treadmill and control the speed of the treadmill so that it's automatically running at the pace of the music that I'm hearing. So in that instance— But the video itself, that's not pacing anything, is it? The video, Judge Rainer is exactly right. The video is not pacing in either of these embodiments. The video is merely providing a backdrop, and the pacing is coming from the other components of system 100 that have already been fully and elaborately described in this specification. That's how—I think that is the reading that resolves all of this and leaves no loose ends left over. And I would—I'm sure I'm out of time here, but I would just point out that in terms of the patent's differentiation between playing information and other ways of presenting it, Claim 35 we think is illustrative, where it talks about how the data storage and playback device plays music but displays the average, the target tempo value. And it uses the word display, not play. Can you just address quickly for me the point that I had raised with counsel in the beginning about whether or not Claim 25's preamble provides antecedent basis for the user? I know that wasn't raised in your brief, so I want to make sure that you think that is correct and not that you're just not addressing it because you don't want to point out that I'm wrong. No, no, no. It's entirely possible, so tell me. I agree with you. In fact, my reaction, Your Honor, when you raised that was to sort of say, oh, why didn't I think of that? But I think it does provide antecedent basis. I think that the user, it obviously depends for antecedent basis on the preamble, and I agree with what I took to be Your Honor's comment that it's talking about a characteristic. The website has to be configured so as to permit the user to do certain things. We did in our brief and below also point out that Claim 28's not asserted clearly relies upon the preamble for antecedent basis, and we obviously also argued that in our view this is the quintessential situation where the preamble breathed life, meaning, and vitality into the claim, right, for the reasons that the district court accurately encapsulated in the opinion below. If there are further questions, I'm happy to address them. Thank you. Thank you, Mr. Bloomberg. Mr. Woodman, we'll give you your rebuttal time back. Let me just address very quickly the last point that counsel raised with respect to Claim 28. That claim does refer back to the pacing system, but that's just a redundancy and unnecessary and is not significant as far as claim interpretation. The issue that Judge Moore raised initially about the user, something we had not considered, hadn't been raised, and I haven't thought it through fully, but I think just to reiterate the point that I made before, the user is not a structural element of the claim. It does refer back to the user in the preamble, but it doesn't impart any, doesn't require, let me say that, doesn't require that the preamble be considered a limitation. And the reason the district court, the only reason the district court held the preamble to be a limitation was that the court said that without the preamble, the elements of the claim, the structural elements of the claim, what he called the technical features of the claim could be employed for other purposes. Well, there's nothing wrong with that. I mean, that's the law. That's black letter patent law. Goes back to the Supreme Court decision of, I believe it's the Ryer case, 1875, Roberts versus Ryer, which this court has cited numerous times. That says that a patentee that obtains a patent to an apparatus claim is entitled to all uses for that apparatus, whether he's considered them, contemplated them, or conceived them or not. I think your strongest argument, counsel, is your column 16 argument. Would you turn to that? Yes, of course. Mr. Groombridge characterized the video as an optional add-on feature, but not a description of an embodiment using the claimed system. So can you direct yourself to that issue? Yes, of course, Your Honor. Well, I think in column 16, right beginning at line 34, it says another example of the method using the system 100 is as follows, and it goes on. And then in line 51, which is more relevant here, it says another example of the method using the system 100 concerns the treadmill and the video monitor that's mounted in front of the treadmill that provides, and I quote, video images of locations where a user runs, walks, cycles, et cetera, are displayed on the video screen in front of the treadmill. The frame rate is adjusted automatically calibrated to match the speed of the user's pace. That's not quite technically speaking at the speed of the user's pace, but it's not quite technically accurate, but it does convey the idea that this video is a moving image. It's nothing repetitive about it. It's a simulation of the path or the route along which the user would be running or biking or rowing. And it's a clear statement that the video monitor is a playback device. There's no question about that. It's a playback device. And the ordinary meaning of playback device, I mean, it's self-explanatory. In fact, the whole, the claim, the language is a data storage and playback device, period. Is there a definition for a playback device going back to column four and looking at lines 55 through 65? I mean, there at the very end, the fourth line from the bottom, it says a playback device adapted to producing sensible tempos. So that would tend one to think that a video that doesn't have a tempo to it, it's not a playback device. Well, Your Honor, I would refer you to column five of the first full paragraph. And my starting line 13 is a full description of the data storage and playback device and includes various features that perform various functions. And one of the functions is receiving information from the data storage back and sending and receiving information to and from the playback device. One of the things that this does that we haven't addressed before, and I'd like to do that very quickly, is in column 11, at line 29, from lines 29 to 49, the specification describes the use of the system with an auxiliary device like a pedometer that measures the actual pace with what the patent calls the current state of the user, compares it to the target pace, and provides a warning through the playback device that tells the user whether he or she is below the target pace. This is exactly what Garmin does. So this is not a case where we're trying to put a square peg in a round hole. The Garmin system fits squarely within not only the letter of the claim 25, but the spirit of the claim, spirit that's described in the specification. Thank you, Mr. Wigman. This argument has proceeded at a fast pace.